UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THEOPHANIA ASHLEIGH,
                              Plaintiff,

              -v-

THE MOUNT SINAI HOSPITAL,
                              Defendant.

25-CV-6171 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Theophania Ashleigh, proceeding *pro se*, brings claims of discrimination, retaliation, hostile work environment, and constructive discharge under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  (ECF No. 14.)  Now before the Court is Defendant The Mount Sinai Hospital's motion to dismiss Ashleigh's first amended complaint ("Amended Complaint").  (ECF No. 22.)  For the reasons that follow, Defendant's motion to dismiss is granted in part and denied in part.

I.      **Background**

The following facts are taken from Ashleigh's Amended Complaint and are presumed true for the purposes of this motion.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

Ashleigh, a Black Canadian national, was a resident physician in the medical residency training program at The Mount Sinai Hospital ("Mount Sinai" or the "Hospital").  (ECF No. 14 ("FAC") ¶ 1.)  Prior to starting her second year of residency, Ashleigh informed Dr. Michelle Fabian, the Program Director of the Neurology Department, that her H-1B visa required a July 29, 2020 start date; Ashleigh was nonetheless assigned a start date of July 1, 2020.  (*Id.* ¶¶ 8, 15-

1

17.)  When Ashleigh objected to this start date, Fabian described her as "not a team player" to senior residents and informed Ashleigh that her graduation date would be delayed, which would negatively impact her fellowship applications.  (*Id.* ¶¶ 20, 23.)  Another non-Black resident in the program, however, was permitted to maintain their original graduation date, despite also having "a visa-related start date delay."  (*Id.* ¶ 21.)

During Ashleigh's second year of residency, from July 29, 2020 to July 28, 2021, she was the only visibly Black resident.  (*Id.* ¶ 7.)  Ashleigh alleges that, during her residency, Fabian made several racially charged comments, including remarking on Ashleigh's Historically Black College and University ("HBCU") background, expressing surprise that Ashleigh was doing so well in the program, and describing the symptoms of Black patients as "malingering." (*Id.* ¶¶ 10, 12.)  Fabian and other attending physicians also undermined Ashleigh in front of colleagues—for example, by glaring at her or rolling their eyes when Ashleigh would ask questions.  (*Id.* ¶ 25.)  Ashleigh heard colleagues question the point of diversity initiatives, refer to Black individuals as "loud" and "crass," and use phrases such as "slave work" and "only the chosen people."  (*Id.* ¶¶ 13-14, 24.)

Ashleigh also alleges several instances of differential treatment.  In December 2020, Ashleigh was told to complete additional tasks following an eighteen-hour shift rather than hand off her patients, while other residents were relieved on time.  (*Id.* ¶¶ 27-28.)  Senior residents in the program instructed Ashleigh not to call them overnight for assistance, but encouraged her peers to do so.  (*Id.* ¶ 30.)  And unlike the visas of other residents, Ashleigh's H-1B visa (the processing of which she alleges is handled by Mount Sinai) did not list the Veterans Affairs site as an approved work site, which precluded Ashleigh from completing her rotations there until she independently secured the necessary visa modifications.  (*Id.* ¶¶ 2, 34.)  After Ashleigh

raised concerns about her mistreatment in the program, her workload was increased, and she was called in to cover more shifts.  (*Id.* ¶ 31.)

In early 2021, nurses accused Ashleigh of being delayed in her responses, which Fabian memorialized in Ashleigh's official evaluation.  (*Id.* ¶¶ 36-37.)  Ashleigh alleges that these accusations "were contradicted by [Ashleigh's] paper logs and other contemporaneous documentation" (*id.* ¶ 38), and that Fabian had admitted to Ashleigh that some of the evaluations were "not accurate" and that she was "double-penalizing" her by using incorrect dates (*id.* ¶ 40 (quotation marks omitted)).  Nevertheless, Fabian did not correct Ashleigh's evaluations.  (*Id.* ¶¶ 38, 40.)  Instead, Fabian told Ashleigh that she did not belong in the program, suggested that she pursue another career, and reminded Ashleigh that she had the power to give Ashleigh poor evaluations.  (*Id.* ¶¶ 41, 43-44.)

Prior to her third year of residency, Ashleigh attempted to transfer to Mount Sinai's Internal Medicine program.  (*Id.* ¶¶ 51-52.)  After Fabian became involved, however, the transfer process was stopped.  (*Id.* ¶ 56.)  Ashleigh alleges that other career and transfer options within Mount Sinai were also abruptly derailed after the Department's leadership became involved.  (*Id.* ¶ 58.)  On July 28, 2021, Ashleigh resigned from the program "due to the intolerable working conditions caused by" Mount Sinai.  (*Id.* ¶ 60.)  Since her resignation, Mount Sinai has still not provided Ashleigh with certified hard copies of her Internal Medicine and PGY-2 completion certificates, citing staff turnover and its inability to find the certificates.  (*Id.* ¶ 61.)

## II.    Procedural History

On April 11, 2022, Ashleigh filed a complaint with the New York State Division of Human Rights ("SDHR"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against based on her race, national origin, and marital status. (*See* ECF No. 24 at 6; ECF No. 27 at 13 n.4; ECF No.

23-1 at 1.)[1]  In May 2023, the SDHR found no probable cause to believe that Mount Sinai "has

engaged in or is engaging in the unlawful discriminatory practice complained of."  (ECF No. 23-

1 at 1.)  The following month, the EEOC issued a determination that "adopted the findings of the

state or local fair employment practices agency that investigated [Ashleigh's] charge" and

declined to proceed further with its investigation.  (ECF No. 14 at 20.)  That EEOC notice gave

Ashleigh ninety days to file a federal lawsuit based on the underlying charges.  (*Id.*)

Ashleigh filed suit in this Court on July 25, 2025.  (ECF No. 1.)  After the Court denied

Ashleigh's motion to proceed under a pseudonym (ECF No. 11), Ashleigh filed an amended

complaint with her real name (FAC).  On December 16, 2025, Mount Sinai moved to dismiss

Ashleigh's Amended Complaint (ECF No. 22) and filed an accompanying memorandum in

support (ECF No. 24 ("Mem.")).  Ashleigh filed her opposition on January 16, 2026 (ECF No.

27 ("Opp.")), and Mount Sinai filed its reply on February 6, 2026 (ECF No. 33 ("Reply")).

## III.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he

Supreme Court has established the following order to be followed in determining whether the

pleading is adequate:  'When there are well-pleaded factual allegations, a court should assume

their veracity and *then* determine whether they plausibly give rise to an entitlement to relief.'"

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at

---

[1]  Although the SDHR's "Determination and Order After Investigation" was not attached to, or referenced in, Ashleigh's Amended Complaint, "courts regularly take notice of [NYSDHR] filings and determinations relating to a plaintiff's claims."  *Rasmy v. Marriott Int'l, Inc.*, No. 16-CV-04865, 2017 WL 773604, at *5 n.4 (S.D.N.Y. Feb. 24, 2017) (Nathan, J.) (quotation marks omitted).

679).  In undertaking this analysis, "[t]he court must also construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quotation marks omitted).  Moreover, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quotation marks omitted).

## IV.    Discussion

### A.    Title VII

Ashleigh brings discrimination, retaliation, hostile work environment, and constructive discharge claims against Mount Sinai under Title VII.  (FAC at 16-17.)  The EEOC, however, issued its right-to-sue notice on June 27, 2023, and Ashleigh did not file suit in this Court until July 25, 2025—over two years later.  (FAC at 20; ECF No. 1.)  Because a Title VII suit "must be commenced not more than 90 days after receipt of the right-to-sue letter," *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) (citing 42 U.S.C. § 2000e–5(f)(1)), Mount Sinai argues that Ashleigh's Title VII claims are time-barred.

"[T]he 90-day limitations period provided by [Title VII] begins to run when a right-to-sue letter issued by the [EEOC] is first received either by the claimant or by the claimant's counsel." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 36 (2d Cir. 2011) (per curiam) (footnote omitted).  Although "[t]here is a presumption that a notice provided by a government agency was mailed on the date shown on the notice," and "that a mailed document is received three days after its mailing," *id.* at 37, that initial presumption may be rebutted if a plaintiff presents "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail," *id.* (quotation marks omitted).  "[A] claimant does not lose

5

his right to sue when fortuitous circumstances or events beyond his control delay receipt of the EEOC's notice." *Lowrie v. N. Cent. Bronx Hosp.*, No. 87-CV-4079, 1989 WL 1143932, at *1 (S.D.N.Y. July 17, 1989).

Ashleigh alleges that neither she nor her counsel received the EEOC's notice until April 28, 2025. (FAC at 6.) In support of this allegation, she supplies email correspondence from her prior counsel notifying her that the EEOC had issued a Determination and Notice of Rights on June 27, 2023, but that their office "never received a copy of this document until today [*i.e.*, April 28, 2025]." (ECF No. 28-1 at 27.) Ashleigh also states in a declaration that the EEOC's notice did not include an address for any of her former lawyers, that it did not accurately state her address because it had omitted a street number, and that prior counsel did not provide her email address to the EEOC for digital correspondence. (ECF No. 28 ¶ 19.)[2] Indeed, the EEOC notice itself, which Ashleigh attaches to her Amended Complaint, does not appear to include a mailing address or contact information for Ashleigh's prior counsel. (*See* ECF No. 14 at 20-21.)

Ashleigh's declaration, together with the email correspondence and EEOC notice she attaches to her pleadings, are sufficient to demonstrate that Ashleigh and her counsel did not actually receive the EEOC's right-to-sue letter until April 28, 2025. Accordingly, because Ashleigh timely filed her lawsuit in this Court, Mount Sinai's motion to dismiss her Title VII claims on this basis is denied.[3]

---

[2] Ashleigh attaches these materials to her opposition to Mount Sinai's motion to dismiss. (ECF No. 28.) Although the Court's review is generally confined to the pleadings themselves when considering a motion to dismiss, "the Court is permitted to consider factual allegations made by pro se plaintiffs in their opposition papers," *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2025 WL 903757, at *10 (S.D.N.Y. Mar. 25, 2025), as well as affidavits attached to those opposition papers, *Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 521 n.1 (S.D.N.Y. 2016).

[3] Because the Court concludes that Ashleigh's lawsuit was timely filed, it does not reach the question of whether the ninety-day limitations period should be equitably tolled.

B.     **NYSHRL and NYCHRL**

Ashleigh also brings employment discrimination claims under the NYSHRL and NYCHRL.  (FAC at 4.)  Mount Sinai points out, however, that both the NYSHRL and NYCHRL contain "election of remedies" provisions, which "provide that a person who files a complaint with either the [SDHR] or the New York City Commission on Human Rights thereby waives his or her right to sue in court."  *Rasmy v. Marriott Int'l, Inc.*, No. 16-CV-04865, 2017 WL 773604, at *4 (S.D.N.Y. Feb. 24, 2017) (Nathan, J.) (cleaned up).  (Mem. at 10.)  "Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with *either* the SDHR or the Commission.  This bar applies in federal as well as state court."  *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011).  The Second Circuit "ha[s] construed the election-of-remedies provision as a jurisdictional bar that divests a federal court of subject matter jurisdiction."  *Mauro v. New York City Dep't of Educ.*, No. 21-2671, 2022 WL 17844438, at *3 (2d Cir. Dec. 22, 2022) (summary order) (collecting cases).

Mount Sinai is correct that Ashleigh's state law claims are barred by the "election of remedies" doctrine.  The record shows—and Ashleigh does not contest—that she filed a complaint with the SDRH alleging discrimination based on substantially the same allegations as she presents here.  (*See* Opp. at 20; *see generally* ECF No. 23-1.)  Ashleigh responds that she was "actively misled" because her prior counsel failed to inform her of (1) the consequences of proceeding with her SDHR complaint and (2) the sixty-day window Ashleigh had to appeal the SDHR's determination.  (Opp. at 20.)  These allegations may sustain a separate claim against Ashleigh's attorneys, but they do not overcome the state and city laws' clear election-of-remedies bar.  Accordingly, because Ashleigh's previously filed complaint with the SDHR divests this Court of subject matter jurisdiction to consider her NYSHRL and NYCHRL claims, those claims are dismissed.

7

**C.**     **42 U.S.C. § 1981**

Finally, Ashleigh brings discrimination, retaliation, hostile work environment, and constructive discharge claims under 42 U.S.C. § 1981.  (FAC at 4.)  As a preliminary matter, Ashleigh concedes that any "discrete discriminatory acts occurring before July 25, 2021 are time-barred as independent § 1981 claims."  (Opp. at 15.)  *See Bell v. SL Green Realty Corp.*, No. 19-CV-8153, 2022 WL 2819054, at *4 (S.D.N.Y. July 19, 2022) ("The statute of limitations for § 1981 claims alleging discrimination in the workplace is four years.").  Ashleigh contends, however, that her resignation on July 28, 2021 and Mount Sinai's subsequent refusal to provide her with her physical certificates—which are the only allegations of adverse treatment that postdate July 25, 2021—(1) may be considered in conjunction with time-barred conduct as continuing violations of § 1981, and (2) are in any case independently actionable under § 1981. (*Id.* at 16.)

**1.**     **Continuing Violations**

Ashleigh has not shown that her resignation (which she describes as a "constructive discharge") and Mount Sinai's refusal to hand over her physical certificates amount to "continuing violations" of § 1981.  Under the "continuing violation" doctrine, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (quotation marks omitted).  As a general matter, however, this doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances," which are not present here.  *Trinidad v. New York City Dep't of Correction*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (quotation marks omitted).  This argument also fails on the merits.  As Mount Sinai correctly notes, "[t]he 'continuing violation' doctrine applies only to harassment claims," and "is inapplicable to discrimination and retaliation claims."  *Harris v. Bd. of Educ. of*

8

*the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017).  And while

Ashleigh alleges several time-barred incidents that could be construed as harassment, her

allegations describe "discrete discriminatory acts" performed by different people at different

times, rather than an overarching discriminatory scheme.  *See Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time

barred, even when they are related to acts alleged in timely filed charges."); *Lambert v. Genesee*

*Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) ("[M]ultiple incidents of discrimination, even similar ones,

that are not the result of a discriminatory policy or mechanism do not amount to a continuing

violation."), *overruled on unrelated grounds*, *Greathouse v. JHS Security, Inc.*, 784 F.3d 105 (2d

Cir. 2015).  The Court therefore may not consider any alleged conduct predating July 25, 2021

under the "continuing violation" doctrine.

### 2.    Independent Violations

Ashleigh also cannot sustain claims of discrimination, retaliation, or hostile work

environment under § 1981 based solely on her resignation and Mount Sinai's refusal to provide

her with her physical certificates.  "Claims of employment discrimination and retaliation

under . . . § 1981 . . . are analyzed under the same framework that applies to Title VII claims."

*Johnson v. City of New York*, No. 17-CV-7585, 2019 WL 4468442, at *13 (E.D.N.Y. Sept. 18,

2019).  "[O]nly discrimination on the basis of race is cognizable under [§ 1981]."  *Lewis v.*

*Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 989 (S.D.N.Y. 2017) (citing *Anderson v.*

*Conboy*, 156 F.3d 167, 170 (2d Cir. 1998)).

Ashleigh's resignation and Mount Sinai's failure to provide her physical certificates do

not by themselves "give rise to an inference of discrimination," as is required to state a claim of

discrimination under § 1981.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir.

2015).  And setting aside, as the Court must, any alleged conduct predating July 25, 2021,

9

Ashleigh also does not allege facts suggesting that she was forced to resign or refused her certificates "because [s]he [] opposed any unlawful employment practice," as is required to state a claim of retaliation. *Id.* at 90 (quotation marks omitted); *see also Radice v. Eastport S. Manor Cent. Sch. Dist.*, 437 F. Supp. 3d 198, 210 (E.D.N.Y. 2020) (noting that but-for causation is required for § 1983 retaliation claims). Nor can Ashleigh state a claim of hostile work environment, as all of her primary allegations of mistreatment are time-barred under § 1981's four-year statute of limitations.

That leaves only Ashleigh's constructive discharge claim. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (quotation marks omitted). This is an objective standard: "Work conditions are 'intolerable' if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bright-Asante v. Saks & Co., Inc.*, 242 F. Supp. 3d 229, 243 (S.D.N.Y. 2017), *aff'd*, 855 F. App'x 40 (2d Cir. 2021). In evaluating a claim of constructive discharge, the Court may consider time-barred conduct that Ashleigh alleges contributed to an intolerable work environment. *See Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 587 n.5 (S.D.N.Y. 2014).

Ashleigh's allegations are sufficient to state a claim for constructive discharge. Ashleigh states, for example, that Fabian and other colleagues made racist and racially charged comments on several occasions (FAC ¶¶ 10, 12-14, 24), that she was repeatedly undermined in public by her colleagues (*id.* ¶ 25), that her colleagues modified her pager so that she missed critical communications while on shift (*id.* ¶ 26), that more work was foisted upon her compared to other

residents (*id.* ¶ 27-28, 30-31), that little was done after she escalated her concerns about harassment to management (*id.* ¶¶ 46-50), that Fabian issued her inaccurate negative evaluations and "strongly suggest[ed]" that she pursue another career (*id.* ¶¶ 36-40, 41, 43), and that department leadership interfered with her efforts to transfer to a different residency program within Mount Sinai (*id.* ¶ 56-58), thus constructively forcing her to resign. Construed in the light most favorable to Ashleigh, the Amended Complaint describes myriad instances of mistreatment that raise an inference of race-based discrimination and that culminated in a work environment so antagonistic that a reasonable jury could find it intolerable to a reasonable person.

In short, the Court cannot conclude at this juncture that Ashleigh's allegations are insufficient as matter of law to support a constructive discharge claim. *Cf. Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014). Accordingly, Mount Sinai's motion to dismiss is denied as to Ashleigh's constructive discharge claim under § 1981, but granted as to Ashleigh's discrimination, retaliation, and hostile work environment claims under § 1981.

## V.      Conclusion

For the foregoing reasons, Mount Sinai's motion to dismiss Ashleigh's Amended Complaint is GRANTED in part and DENIED in part. Mount Sinai's motion to dismiss is denied as to Ashleigh's Title VII claims and her constructive discharge claim under 42 U.S.C. § 1981. Mount Sinai's motion to dismiss is granted as to all other claims.

Mount Sinai shall file an answer to the remaining claims within 14 days after the date of this Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at Docket Number 22.

SO ORDERED.

Dated: April 27, 2026
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

11